United States District Court
Southern District of Texas
**ENTERED**
November 15, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:21-cv-258

KAYLEEYSE MARTINEZ, *PLAINTIFF*,

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *ET AL.*, *DEFENDANTS*.

**MEMORANDUM OPINION AND ORDER**

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants have moved to dismiss the plaintiff's second amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkts. 16, 25, 28. The court grants the motions as to the federal claims against all defendants and, declining to exercise supplemental jurisdiction over the state-law claims, remands the case to state court.

I.  **BACKGROUND**[1]

Eugenio Espinoza Martinez was an inmate at the Clarence N.

---

[1] When hearing a motion to dismiss under Rule 12(b)(6), the court must take factual allegations in the complaint as true and construe them favorably to the

Stevenson Unit in DeWitt County. Dkt. 15 ¶ 5.1. On January 7, 2019, he was transferred to the Darrington Unit in Brazoria County, where the plaintiff alleges that Martinez received insufficient care for his diabetes and hypertension. *Id.* ¶¶ 5.1–5.2. On June 4, 2019, Martinez experienced trouble breathing and severe back pain. *Id.* ¶ 5.3. Martinez was then transferred to the prison's infirmary, where the medical staff determined that he was suffering from anxiety and did not need hospitalization. *Id.*

Two days later, after continued complaints from Martinez about his breathing, Martinez was transported on a g back to the infirmary. *Id.* ¶ 5.4. Later that morning, Martinez struggled to breathe as he tried to get to his "dorm area" with a walker. *Id.* (alteration omitted). Eventually, he collapsed. *Id.* Observing officers called for medical personnel to assist him with a wheelchair. *Id.* The plaintiff alleges, however, that the responding medical personnel stood over Martinez laughing and told him to get into the wheelchair himself. *Id.* Martinez again asked infirmary personnel to transport him to the hospital, but they did not. *Id.* Instead, Martinez was returned to his dorm a short time later. *Id.*

---

plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The allegations in this section are taken from the plaintiff's pleadings.

The next day, a fellow inmate notified a dorm officer that Martinez needed medical attention. *Id.* ¶ 5.5. The dorm officer checked on Martinez and "immediately called for medical attention." *Id.* Martinez told the responding officers that he could not breathe. *Id.* After medical personnel arrived, they took him to the infirmary. *Id.* Later that evening, infirmary personnel transferred Martinez to the University of Texas Medical Branch (UTMB) Angleton Danbury Campus. *Id.* ¶ 5.6. Attending staff found Martinez acutely ill with multi-organ system failure and transferred him to UTMB-Galveston the next day. *Id.* Upon arrival at UTMB-Galveston, Martinez was in septic shock; he tested positive for a staph infection. *Id.* He died hours later. *Id.*

The plaintiff, Martinez's daughter and sole heir, initially brought this action in state court against UTMB-Correctional Managed Care, the Texas Department of Criminal Justice (TDCJ), Warden Bruce Armstrong, and two UTMB nurse practitioners. *See* Dkt. 2-2, Exhibit B at 12–13. The defendants removed the case to this court on September 22, 2021. Dkt. 1. The plaintiff amended her complaint on October 14, 2021. Dkt. 4. The plaintiff filed her second amended complaint, her live pleading, on December 3, 2021. Dkt. 15. The second amended complaint alleges state-law negligence, survival, and wrongful-death claims and federal claims arising under the Eighth

Amendment and 42 U.S.C. § 1983. Dkt. 15 ¶¶ 6.A.1–6.J.1. The defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), (6). Dkts. 16, 25, 28.

## II. LEGAL STANDARD

### A. 12(b)(1)

Rule 12(b)(1) requires dismissal if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proof. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

To test whether the party asserting jurisdiction has met its burden, a court may rely upon: "(1) the complaint alone; (2) the complaint

supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

### B. 12(b)(6)

Under Rule 12(b)(6), a court should dismiss a case if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007). When considering a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the non-moving party. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). But the complaint must still provide enough facts for the court to infer that the non-moving party is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555–56. The claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, No. CV H-19-1410, 2022 WL 3212931, at *3 (S.D. Tex. Aug. 8, 2022) (quoting *Iqbal*, 556 U.S. at 678). "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal

conclusions.'" *Vanskiver v. City of Seabrook*, No. H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols.*, Inc., 365 F.3d 353, 361 (5th Cir. 2004)). Naked assertions and formulaic recitals of the elements of the claim will not suffice. *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

The plaintiff seeks relief under § 1983 because the following defendants allegedly violated Martinez's Eighth Amendment rights: TDCJ, Warden Armstrong, UTMB, and two nurses (Mbugua and Nwafor) who work for UTMB-Correctional Managed Care. *See* Dkt. 15 ¶¶ 5.8–5.9, 6.A.2, 6.B.2, 6.C.2. The court considers the claims against the state entities and individual defendants separately.

### A. TDCJ and UTMB

#### 1. The Eleventh Amendment

The Eleventh Amendment is a jurisdictional bar that applies to suits "in which the State or one of its agencies or departments is named as the defendant." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Cox v. Texas*, 354 F. App'x 901, 902 (5th Cir. 2009) (per curiam). Section 1983 authorizes suits against any "person" who deprives a plaintiff of any "rights, privileges, or immunities" the Constitution secures.

42 U.S.C. § 1983. The statute did not abrogate states' sovereign immunity, so states are not "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–71 (1989). Plaintiffs can only overcome the Eleventh Amendment if a state consents. *Id.* at 67.

"There is no bright-line test" to determine when a state's agencies or entities enjoy Eleventh Amendment immunity. *Vogt v. Bd. of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 689 (5th Cir. 2002). Instead, courts ask whether the suit is "effectively against the sovereign state" despite the suit naming "a state agency as the nominal defendant." *Stratta v. Roe*, 961 F.3d 340, 350 (5th Cir. 2020) (quotation omitted). Six factors exist to guide courts in this inquiry:

> (1) whether state statutes and case law characterize the agency as an arm of the state;
> (2) the source of funds for the entity;
> (3) the degree of local autonomy the entity enjoys;
> (4) whether the entity is concerned primarily with local, as opposed to statewide, problems;
> (5) whether the entity has authority to sue and be sued in its own name; and
> (6) whether the entity has the right to hold and use property.

*Vogt*, 294 F.3d at 689 (citations omitted). "The most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *Id.* (quotation omitted).

### 2. TDCJ

First, the plaintiff alleges that TDCJ violated Martinez's Eighth Amendment rights and seeks relief under § 1983. Dkt. 15 ¶¶ 5.9, 6.A.1–6.A.3. The defendants argue that Texas's sovereign immunity protects it against liability under § 1983 because TDCJ is a state agency. *See* Dkt. 16 at 5–6 (arguing that § 1983 does not apply because the agency is not a "person" within the meaning of the statute). The defendants are correct.

Though six factors help determine if a state agency enjoys sovereign immunity, *see Vogt*, 294 F.3d at 689, the court need not consider the factors here because the Fifth Circuit has squarely held that TDCJ enjoys Texas's immunity. *Cox*, 354 F. App'x at 902 (citing *Harris v. Angelina Cnty.*, 31 F.3d 331, 338 n.7 (5th Cir. 1994); *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998)). Additionally, neither Texas nor TDCJ have waived TDCJ's sovereign immunity. *Id.* at 903. Accordingly, the court dismisses the plaintiff's § 1983 claim against TDCJ for lack of jurisdiction.

### 3. UTMB

It is unclear whether the plaintiff makes a § 1983 claim against UTMB. *See id.* ¶ 5.9 ("[E]ach [of the defendants] were acting under the color of law and are liable pursuant to the Eighth Amendment of the Constitution of the United States and pursuant to 42 U.S.C. § 1983"). *But see id.* ¶¶ 6.E.1–2 (not

mentioning a § 1983 claim against UTMB). To the extent that the plaintiff makes this claim, UTMB argues that the Eleventh Amendment shields it from liability. Dkt. 25 at 4–5. The court agrees.

UTMB is a higher-learning institution under Texas Education Code § 61.003(5), which makes it a state agency under the Texas Government Code § 572.002(10)(B). The Fifth Circuit has previously determined that sovereign immunity applies to UTMB, and Texas has not waived it. *See Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). Therefore, the court dismisses the federal claims against UTMB for lack of jurisdiction.

### B. The Individual Defendants

#### 1. 42 U.S.C. 1983

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the constitution or laws of the United States. 42 U.S.C. § 1983. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Plaintiffs may bring a § 1983 suit against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

### 2. Qualified Immunity

Section 1983 claims are subject to the affirmative defense of qualified immunity. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"When considering a qualified[-]immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the [c]ourt must determine whether 'the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Rojero v. El Paso Cnty.*, 226 F. Supp. 3d

768, 776–77 (W.D. Tex. 2016) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648.

To determine whether qualified immunity applies, courts undertake a two-step analysis. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). "Courts have discretion to decide the order in which to engage these two prongs." *Id.* at 656. First, the court asks whether the officer in fact violated a constitutional right. *Id.* at 655–56. Second, the court asks "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The "court may rely on either prong of the defense in its analysis." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "To say that the law was clearly established, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (internal quotation marks and citation omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have

believed his actions were proper." *Callahan*, 623 F.3d at 253.

### 3. Armstrong

The plaintiff alleges that Warden Armstrong is liable under § 1983 for violating Martinez's Eighth Amendment rights. Dkt. 15 ¶¶ 6.B.1–6.B.3. The defendants argue that qualified immunity protects Armstrong[2] because the plaintiff pleaded no facts showing his personal involvement in any unlawful activity. Dkt. 16 at 12–13 (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)).

A supervisor is liable for his subordinates' unlawful acts under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation omitted); *see also Valentine v. Jones*, 566 F. App'x. 291, 294 (5th Cir. 2014) (per curiam). Indeed, "vicarious liability" does not apply to § 1983 suits. *Iqbal*, 556 U.S. at 676; *see also Coleman v.*

---

[2] Though it is not clear from the pleadings whether the plaintiff asserts federal claims against Armstrong in his official or individual capacity, the court notes that Texas's Eleventh Amendment immunity prevents any claim against him in his official capacity. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the [§ 1983] suit because they assume the identity of the government that employs them.") (internal quotation omitted). Therefore, the court construes them as individual-capacity claims.

*Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534–35 (5th Cir. 1997). Moreover, a plaintiff's claim against a supervisor for her subordinates' actions must show "that the supervisor acted, or failed to act, with *deliberate indifference* to [their subordinates'] violations of others' constitutional rights." *Porter*, 659 F.3d at 446 (internal quotation omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 446–47 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006) (characterizing deliberate indifference as "an extremely high standard to meet") (quotation omitted).

The plaintiff does not allege facts showing that Armstrong's acts deprived Martinez of constitutional rights. Nor does the plaintiff allege that Armstrong implemented a policy that led his subordinates to violate Martinez's constitutional rights. Critically, the complaint does not identify Armstrong's acts or omissions that show deliberate indifference to Martinez's condition; instead, the plaintiff's allegations respecting Armstrong are merely conclusory—for example, that "[t]he acts, omissions, and failures of . . . Armstrong on the occasions in question were unreasonable and were the proximate and producing causes of the injuries and untimely death of [Martinez] and the damages suffered by [the]

[p]laintiff." *Id.* Accordingly, the court dismisses the plaintiff's federal claims against Armstrong.

### 4. Mbugua and Nwafor

The plaintiff claims that two UTMB nurse practitioners, Adaobi Nwafor and David Mbugua, violated Martinez's Eighth Amendment right against cruel and unusual punishment when they "failed to recognize and ignored" Martinez's infection. Dkt. 15 ¶¶ 5.8, 6.C.2. The nurse–defendants argue that qualified immunity protects them because (1) the plaintiff did not allege facts showing the nurses' personal involvement with any alleged violation of Martinez's rights and (2) the plaintiff did not sufficiently show the nurses' deliberate indifference. Dkt. 28 at 4–8. The court will dispose of this claim on deliberate-indifference grounds.

Deliberate indifference goes to the first prong of the qualified-immunity test—whether the nurses violated a clearly established constitutional right. *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001). This is a subjective test. *See id.* (citing *Farmer*, 511 U.S. at 834). Deliberate indifference is a higher standard than even gross negligence. *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996). It involves "unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quotation and citations omitted), or disregard of "serious

medical needs.*" Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) (citation omitted). A plaintiff might also demonstrate deliberate indifference where a medical professional "refused to treat him, ignored his complaints, [or] intentionally treated him incorrectly." *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018). In cases where the plaintiff is challenging medical treatment as cruel and unusual punishment, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert*, 463 F.3d at 346 (citation omitted); *see also Estelle*, 429 U.S. at 106.

The plaintiff makes broad-stroke allegations against the "medical" or "infirmary" personnel at the Darrington Unit. But none of the specific facts in the complaint related to Martinez's medical treatment identify Mbugua or Nwafor. *See id* ¶¶ 5.3–5.8. The complaint's only allegation against Mbugua and Nwafor is that they "failed to recognize and ignored the severity of infection from which [Martinez] was suffering." Dkt. 15 ¶ 5.8. That's a mere negligence claim and does not implicate deliberate indifference.

Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action," *Thompson*, 709 F.2d at 382 (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976). Therefore, the court cannot "strain" to infer that the complaint's references to "medical personnel" or "infirmary

personnel" relate *specifically* to either Mbugua or Nwafor. *Cf. Southland*, 365 F.3d at 361. The remaining allegations against the nurses are conclusory. For example, the plaintiff alleges that Mbugua and Nwafor "chose to, and intentionally utilized the confines of the prison, and restraints there (real and personal property) to continue [Martinez's] confinement, pain, and anguish." *Id.* ¶ 6.C.3. The plaintiff simply has not pleaded facts sufficient to state a claim to relief that is plausible on its face.

Because the plaintiff failed to plead facts sufficient to show a constitutional violation, the court need not reach the qualified-immunity test's second prong. *Cf. Domino*, 239 F.3d at 755–56 (declining to reach the second prong on a summary-judgment appeal because the facts viewed in a light most favorable to the nonmovant showed no deliberate indifference). Accordingly, the court dismisses the plaintiff's claims against Mbugua and Nwafor.

### C. Leave to Amend

The plaintiff has requested leave to amend her complaint a third time so that she may omit the § 1983 claims against UTMB and TDCJ. Dkt. 27 at 2. Generally, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But as the court has already dismissed the claims against UTMP and TDCJ as barred by the Eleventh Amendment,

there is no need for the plaintiff to replead only to exclude those claims. Therefore, the court denies the plaintiff's request for leave to amend as moot.

\* \* \*

The court grants the defendants' motions to dismiss. Dkts. 16, 25, 28. All federal claims against the defendants are dismissed. Because the court lacks original jurisdiction over the plaintiff's state-law claims, the court declines to exercise supplemental jurisdiction over these remaining claims. 28 U.S.C. § 1367(c)(3). The court therefore remands this action to the 149th Judicial District Court of Brazoria County. All other pending motions are denied without prejudice. Dkts. 8, 26.

Signed on Galveston Island this 15th day of November, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE